**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**FLORIDA FARM BUREAU
GENERAL INSURANCE COMPANY,**

    **Plaintiff,**

v.                                                     **Case No.: 3:09cv145/MCR/EMT**

**VONCILLE JERNIGAN,**

    **Defendant.**

_____/

**ORDER**

In this insurance dispute, the plaintiff, Florida Farm Bureau General Insurance Company ("Farm Bureau General"), sues the defendant, Voncille Jernigan, to recover benefits paid under a flood insurance policy (doc. 1). Pending before the court are cross-motions for summary judgment (docs. 31, 45). Having fully considered the parties' motions, responses, and the evidence in the record, the court concludes defendant's motion should be granted and plaintiff's motion should be denied.

**BACKGROUND**

Farm Bureau General, in its capacity as a Write-Your-Own ("WYO") Program Carrier participating in the National Flood Insurance Program ("NFIP"), issued a Standard Flood Insurance Policy ("SFIP")[1] covering the defendant's property located at 645 South Garcon Point Road, Milton, Florida.[2] The policy was effective for one year, beginning on July 24, 2004, and covered any direct physical loss by or from a flood, as defined in the policy – $250,000 for plaintiff's dwelling and up to $44,041 for contents. On or about September

---

[1] The National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.*, established the NFIP. The Federal Emergency Management Agency ("FEMA"), which is charged with administering the NFIP, promulgated regulations creating the SFIP and providing for marketing and claims adjustment by private insurers operating as WYO companies. *See* 44 C.F.R. § 62.23.

[2] The property belonged to the defendant and her husband, Watson Jernigan, who is now deceased. The policy was issued to both of them.

16, 2004, Hurricane Ivan struck Northwest Florida, causing extensive damage to the defendant's property. Following the hurricane, the defendant notified Farm Bureau General of the loss. Farm Bureau General assigned an adjuster, Richard Kellerman, to assist the defendant with her claim.[3] Kellerman inspected the property and determined it was a total loss due to flooding. Based on Kellerman's estimate of damage and the fact that the estimated actual cash value of the home exceeded $250,000, Farm Bureau General tendered policy limits for the dwelling and contents.[4]

At the time of the hurricane, the defendant's property was insured under a separate homeowner's policy issued by Farm Bureau Casualty Insurance Company ("Farm Bureau Casualty").[5] The homeowner's policy provided $138,500 in coverage for damage due to a covered peril, which included wind but excluded flood. After receiving payment of the limits of the SFIP, the defendant's husband filed a claim under the homeowner's policy seeking to recover for wind damage to the home.[6] Rather than pay the claim, Farm Bureau Casualty filed a Complaint in Santa Rosa County Circuit Court requesting a declaratory judgment that it was not liable for any amount under the homeowner's policy covering the defendant's property for wind damage allegedly sustained as a result of Hurricane Ivan. In response, the defendant asserted a counterclaim against Farm Bureau Casualty for breach of contract based on its failure to pay.[7] At trial, the defendant argued that her home was a total loss due to wind damage. Although she introduced evidence that the appraised actual cash value of her home at the time of Hurricane Ivan was $95,000, she requested

---

[3] Florida Farm Bureau also assigned an engineer to assess the damage to the plaintiff's home.

[4] In a September 24, 2004, memorandum entitled "Subject: Waiver of the Proof of Loss Requirement in the Standard Flood Insurance Policy (SFIP)," FEMA's Acting Federal Insurance Administrator, David I. Maurstad, waived the requirement in Article VII(J)(4) of the SFIP that the policyholder file a proof of loss prior to receiving insurance proceeds and advised that payment of a loss would be based on the evaluation of damage in the adjuster's report.

[5] Although the record reflects that Farm Bureau General and Farm Bureau Casualty are related entities, the relationship between the two is not clear.

[6] The homeowner's policy was issued to Watson Jernigan, defendant's deceased husband.

[7] In connection with the state court action, the parties agreed to allow the defendant to represent her husband's interests because an estate had not yet been opened.

policy limits under Florida's Valued Policy Law.[8]  After a two-day trial on March 9 and 10, 2009, the jury found the defendant's property a total loss as a result of wind damage and returned a verdict in her favor for $138,500, the maximum amount allowed under her homeowner's policy.  Based on the jury's verdict, Farm Bureau General filed this action, asserting a claim for unjust enrichment and seeking to recover the proceeds it paid the defendant under the SFIP.

Farm Bureau General has now filed a motion for summary judgment, arguing that it is required, under the NFIP and supporting regulations, to seek recovery of the amount paid to the defendant under the SFIP.  Florida Farm Bureau also argues that the defendant should be judicially estopped from denying that she is not entitled to the proceeds of the SFIP given the position she took in the state court matter, *i.e.,* that her home was a total loss due to wind damage.[9]  The defendant filed a cross-motion for summary judgment, claiming there is no genuine issue of material fact because there is no recognizable cause of action for "reimbursement of overpayment of insurance proceeds" and that, even if there was, any such claim is barred by the economic loss doctrine, judicial estoppel, a prior settlement, and the doctrines of laches and unclean hands.  For the reasons stated below, the court finds there is no cause of action for unjust enrichment under which Farm Bureau

---

[8] According to Fla. Stat. § 627.702(1)(a), "[i]n the event of a total loss of any . . . structure . . . located in this state and insured by any insurer as to a covered peril, in the absence of any change increasing the risk without the insurer's consent and in the absence of fraudulent or criminal fault on the part of the insured or one acting in her or his behalf, the insurer's liability under the policy for such total loss, if caused by a covered peril, shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged or paid."  SFIPs are not subject to Florida's Valued Policy Law.  *See Greer v. Owners Ins. Co.,* 434 F. Supp. 2d 1267, 1276 (N.D. Fla. 2006).

[9] The court notes that judicial estoppel would seem appropriate given the inconsistent positions taken by the defendant in the two cases, *see Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (noting that, under the doctrine of judicial estoppel, "a party is precluded from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding . . . to prevent the perversion of the judicial process") (internal quotations omitted); however, application of the doctrine would seem more appropriate in the state court action.  Indeed, although the court does not have before it all the facts concerning the state court matter, it appears the plaintiff should have been equitably estopped in that proceeding from claiming a total loss of her property due to wind after she received a payment of more than twice the value of her home under the SFIP.  *See Bokum v. C.I.R.*, 992 F.2d 1136, 1141 (11th Cir. 1993) (noting that the "elements of a traditional equitable estoppel claim" include "(1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (2) wilfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated") (internal quotations omitted).

General can recover in this matter.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* (also noting "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment). Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). When assessing the sufficiency of the evidence, the court must view all the evidence, and all factual inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a genuine issue of material fact and thereby preclude summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). In other words, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (internal citations omitted).

**DISCUSSION**

Pursuant to the NFIA, Congress established the NFIP "to reduce . . . the massive burden on the federal fisc of the ever-increasing federal flood disaster assistance" resulting from the unavailability of reasonable flood insurance in disaster-prone areas. *Till v. Unifirst Fed. Sav. and Loan Ass'n*, 653 F.2d 152, 159 (5th Cir. 1981); *see also* 42 U.S.C. § 4001; *Nicholson v. Countrywide Home Loans*, 2008 WL 731032, at *3 (N.D. Ohio March 17, 2008) (noting that, in "analyzing the legislative history of [the NFIA], courts have concluded that the intended beneficiary of the NFIA is the Federal treasury, not individual borrowers."); *Cruey v. First American Flood Data Services, Inc.*, 174 F. Supp. 2d 525, 531 (E.D. Ky. 2001) (finding that the NFIP "was intended to decrease the need for federal outlays in the form of disaster relief expenditure."). Implemented in 1968, the NFIP has evolved over time, particularly insofar as federal involvement in the program is concerned. *See McCormick v. Travelers Ins. Co.*, 103 Cal. Rptr. 2d 258, 261 (Cal. App. 1st Dist. 2001). As the court in *McCormick* discussed,

> [i]nitially, under what was originally designated as Part A of the NFIA, the program was administered primarily through the National Flood Insurers Association, a pool of private insurance companies, under the supervision and financial support of the Department of Housing and Urban Development (HUD). Then, on April 1, 1979, [FEMA] was made principally responsible for the program's operation and administration and took full control of the payment or disallowance of all flood insurance claims. Under this arrangement, which was designated as Part B of the NFIA, the Director of FEMA was empowered by Congress to carry out the NFIP through the facilities of the federal government. In fulfilling this mandate, the Director of FEMA was authorized to utilize federal employees and/or private insurance companies and other insurers, insurance agents and brokers, and insurance adjustment organizations, who would operate specifically as fiscal agents of the United States while assisting the Director in implementing the NFIP. In 1983, FEMA exercised this regulatory authority by creating the [WYO] program to assist it in marketing and administration of flood insurance through the "facilities of the Federal Government."

*Id.* at 261-62 (internal citations omitted). Operating under FEMA's oversight, WYO

companies, such as Farm Bureau General, issue SFIPs in their own names as insurer and arrange for the adjustment, settlement, payment, and defense of all claims arising from the policies, with the federal government acting as the guarantor and reinsurer. *See* 44 C.F.R. §§ 61.13(f) and 62.23(d); *see also Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). While flood insurance may be issued either directly by FEMA or a WYO company, FEMA establishes the terms and conditions of the policies, which are set forth in Code of Federal Regulations and which may not be "altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator." *Id.* at 953; *see also* 44 C.F.R. §§ 61.4(b); 61.13(d). Moreover, WYO companies must remit all insurance premiums collected from policyholders to be deposited into the National Flood Insurance Fund, which is part of the United States Treasury. *McCormick*, 103 Cal. Rptr. 2d at 262; *see also* 42 U.S.C. §§ 4017(a) and (d). "Premiums are kept in segregated accounts, and are considered federal funds from the moment they are collected, with interest earned belonging to the United States." *McCormick*, 103 Cal. Rptr. 2d at 262. If a WYO company depletes its premium income through the payment of claims, it may acquire additional funds to pay claims "by drawing on FEMA's letters of credit." *Id.* WYO companies receive a 3.3 percent commission on all amounts paid in satisfaction of claims under SFIPs. *See* 44 C.F.R. Pt. 62, Appx. A, Art. III(C)(1). SFIPs provide a dispute resolution process for aggrieved insureds, as well as a remedy for insureds and subrogation rights for insurers. *See* 44 C.F.R. Pt. 61, App. A(1), Arts. VI(S) and VII(M).

In its Complaint, Farm Bureau General asserts a cause of action for unjust enrichment, seeking to recoup the money it erroneously paid the defendant under her SFIP. Although it invokes the court's federal question jurisdiction, Farm Bureau General does not specify whether it is asserting a claim under state or federal law, but assumes federal law because of the federal nature of the funds. In any event, because Farm Bureau General's claim arises under the NFIP, any state law claim for unjust enrichment is preempted by federal law.[10] As a result, in order to proceed in this matter, Farm Bureau

---

[10] *See* 44 C.F.R., Pt. 61, App. A(1), Art. IX ("the policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001 *et seq.*), and Federal common law."); *see also West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978), *cert. denied*, 440 U.S. 946 (1979) ("Since the flood

General must provide a basis for its claim under federal law, whether statutory or common law. Neither the NFIA nor the SFIP explicitly contemplates a cause of action for unjust enrichment, and Farm Bureau General has not cited any cases recognizing such a cause of action in this context. Although an argument could be made for recognition of an implied private right of action under the SFIP, Federal Farm Bureau has not raised this argument, much less pled this cause of action in its Complaint, and the court thus need not address its viability here. In short, Farm Bureau General may proceed in this matter only if the court recognizes a federal common law claim for unjust enrichment under the circumstances of this case.

The Eleventh Circuit has not addressed whether the NFIA authorizes federal common law causes of action; it has, however, addressed whether another federal statutory scheme – ERISA – authorizes such causes of action under analogous circumstances. The court finds such decisions instructive in this matter. In *Sanson v. General Motors Corp.*, 966 F.2d 618 (11th Cir. 1992), *cert. denied*, 507 U.S. 984 (1993), the Eleventh Circuit determined that ERISA preempts a state law cause of action for fraudulent misrepresentation.[11] The court then addressed the appellant's alternative argument that it should create a federal common law cause of action for fraud. In declining to do so, the court noted that the Supreme Court had recently "rejected such an extension of the remedies guaranteed under ERISA." *Id.* at 621. As the Eleventh Circuit observed,

---

insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law."); *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981). As the Fifth Circuit explained in *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 394 (5th Cir. 2007), "the reference to federal common law in the SFIP directs courts to employ standard insurance principles when deciding *coverage* issues under the policy. It does not confer on policyholders the right to assert extra-contractual claims against WYO insurers – which claims, if successful, would likely be paid with government funds." This construction does not change based on the WYO carrier's status as a plaintiff, as opposed to a defendant. Moreover, courts have recognized a distinction between disputes stemming from claims handling and policy procurement, finding the former, but not the latter, to be preempted by federal law. *See id.* at 390.

[11] The court based its holding on § 514(a) of ERISA, which provides, "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).

> "[t]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. 'The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot [or decided not] to incorporate expressly.'" (Emphasis in original).

*Id.* (quoting *Pilot House Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)). The same analysis applies here. Indeed, as set forth above, Congress established the NFIP as a comprehensive regulatory scheme to conserve national treasury funds by providing for reasonably priced flood insurance. Congress delegated to FEMA the power to carry out the NFIP by certain prescribed means. Exercising that power, FEMA created the SFIP. The SFIP, as set forth in the Code of Federal Regulations, specifically provides that *all disputes arising from the handling of any claim thereunder* are governed exclusively by the federal flood insurance regulations, the NFIA, and federal common law.[12] The SFIP also contains a comprehensive regulatory scheme to resolve such disputes.

Considering that Farm Bureau General is seeking to recoup funds paid under an SFIP, its claim clearly arises under an SFIP; its remedy is thus limited to those set forth by FEMA in the federal flood insurance regulations and the NFIA, as interpreted under federal common law insurance principles. *See Wright*, 500 F.3d at 394. Nowhere in that framework is there a provision for the relief requested by Farm Bureau General. As a result, the court cannot provide for such relief through the creation of a federal common law cause of action for unjust enrichment. As the Supreme Court has cautioned,

---

[12] As previously explained, "federal common law," as that phrase is used in the SFIP, refers to contract interpretation and is not an invitation for courts to create a separate or independent cause of action. *See Wright*, 500 F.3d at 394.

> federal courts, unlike their state counterparts, are courts of limited jurisdiction that have not been vested with open-ended lawmaking powers. Broadly worded constitutional and statutory provisions necessarily have been given concrete meaning and application by a process of case-by-case judicial decision in the common-law tradition. The Court also has recognized a responsibility, in the absence of legislation, to fashion federal common law in cases raising issues of uniquely federal concern, such as the definition of rights or duties of the United States, or the resolution of interstate controversies. However, we consistently have emphasized that the federal lawmaking power is vested in the legislative, not the judicial, branch of government; therefore, federal common law is "subject to the paramount authority of Congress." . . . .

*Northwest Airlines, Inc. v. Transport Workers Union of Am.*, 451 U.S. 77, 95 (1981) (quoting *New Jersey v. New York*, 283 U.S. 336, 348 (1931)). "Thus, once Congress addresses a subject, even a subject previously governed by federal common law, the justification for lawmaking by the federal courts is greatly diminished. Thereafter, the task of the federal courts is to interpret and apply statutory law, not to create common law." *Id.* at 95 n.34. Relying on the Supreme Court's decision in *Northwest Airlines*, the Eleventh Circuit held in *Dime Coal Co., Inc. v. Combs*, 796 F.2d 394, 399 n.7 (11th Cir. 1986), that there is no federal common law right to recovery of erroneous payments under an ERISA plan.[13] Specifically, the Eleventh Circuit reiterated the Supreme Court's admonition that "'the presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.'" *Id.* (quoting *Northwest Airlines*, 451 U.S. at 97). When it addressed a similar issue several years later in *McRae v. Seafarers' Welfare Plan*, 920 F.2d 819, 822-23 (11th Cir. 1991), the Eleventh Circuit again refused to recognize federal common law claims for misrepresentation and bad faith under ERISA – even after being confronted with a 1988 Report by the House Education and Labor Committee, later adopted by the House Committee on the Budget, "attacking the Supreme Court's refusal

---

[13] The primary issue in *Dime Coal* was whether an implied private right of action exists under ERISA authorizing trustees of ERISA plans to recover erroneous payments. As previously stated, Farm Bureau General did not request that the court recognize a similar implied private right of action under the NFIA in this case.

to formulate federal substantive law regarding ERISA remedies" and inviting the federal courts to create a body of federal common law.[14] *Id.* at 822. The Eleventh Circuit declined to do so in *McRae*, and there is no indication that it would hold otherwise under the facts of this case.[15] Accordingly, because Congress established the NFIP as a comprehensive regulatory scheme that includes "an integrated system of procedures for enforcement" of the terms of the SFIP, including subrogation rights of insurers, the court must presume that any remedy not included thereunder was deliberately omitted and that no additional remedies are authorized. As a result, there is no basis upon which the court can recognize a federal common law cause of action for unjust enrichment under the circumstances of this case.[16] *See Pilot House*, 481 U.S. at 54; *Northwest Airlines*, 451 U.S. at 95; *Dime*

---

[14] The Report provides in full as follows:

> The Committee believes that the legislative history of ERISA and subsequent expansion of ERISA support the view that Congress intended for the courts to develop a Federal common law with respect to employee benefits plans, including the development of appropriate remedies, even if they are not specifically enumerated in section 502 of ERISA. Since the issue of preemption in civil remedies under ERISA is within the exclusive purview of the labor committees of Congress, the Committee has, over the years, considered the option of amending the statute to encompass specifically several additional remedies. In light of the legislative history on this issue, however, the Committee believes such action is unnecessary. The Committee reaffirms the authority of the Federal courts to shape legal and equitable remedies to fit the fact and circumstances of the cases before them, even though those remedies may not be specifically mentioned in ERISA itself. In cases in which, for instance, facts and circumstances show that the processing of legitimate benefit claims has been unreasonably delayed or totally disregarded by an insurer, an employer, a plan administrator, or a plan, the Committee intends the Federal Court to develop a federal common law of remedies, including (but certainly not limited to) the imposition of punitive damages on the person responsible for the failure to pay claims in a timely manner.

Report of the Committee on the Budget, House of Representatives, 101st Congress, 1st Session, to accompany H.R. 3299, p.55-56 (1989). The Eleventh Circuit held that the Report offered little support for the appellants' claim and, in fact, "indicate[d] that Congress, at least the House Education and Labor Committee, believes that there may be a need for extra-contractual and punitive damages under ERISA – yet has not acted to provide an explicit remedy." *McRae*, 920 F.2d at 825.

[15] In *Wright*, the Fifth Circuit declined to create federal common law claims for fraud and misrepresentation under the NFIA, although under a different set of facts. The court noted that, in determining whether to create such federal common law causes of action, it must look to the language of the statute and that while the NFIA allows a policyholder to sue a WYO company for amounts due under an SFIP, it does not authorize a policyholder to bring extra-contractual claims against a WYO company. 500 F.3d at 393-94.

[16] To the extent there was an oversight in drafting the regulations establishing the SFIP, that oversight is for Congress – not the courts – to correct; but the court would note that denying WYO companies a means through which to recoup overpayments decreases their incentive to make excessive payments in order to

*Coal*, 796 F.2d at 399 n.7.

**CONCLUSION**

For the reasons stated above, it is hereby ORDERED that Farm Bureau General's motion for summary judgment (doc. 31) is **DENIED**, defendant's motion for summary judgment (doc. 45) is **GRANTED**, and plaintiff's Complaint (doc. 1) is **DISMISSED** with prejudice. The Clerk of Court is directed to enter final summary judgment in favor of the defendant consistent with this order and tax costs against the plaintiff.[17]

**DONE AND ORDERED** this 30th day of September, 2010.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

increase the commissions they receive, thereby conserving treasury funds and furthering the purpose underlying the NFIP.

[17] The court issued an order on June 4, 2009, denying the defendant's motion to dismiss. In its motion, the defendant argued, among other things, that the Federal Insurance Administration, not a WYO, is the proper party to seek recoupment of erroneous payments under SFIPs. Recognizing that Farm Bureau General had suffered an injury-in-fact according to the allegations in the Complaint, and also that the insurer would be the proper party to bring a claim under an SFIP in the event one existed, the court denied the defendant's motion. At no point, either now or in connection with the motion to dismiss, did either party present the court with the proper analysis of Farm Bureau General's claim.